IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | | |
|---|---|---|
| JENNIFER FRY, | ) | |
| | ) | |
| Plaintiff, | ) | 4:18CV3145 |
| | ) | |
| v. | ) | |
| | ) | |
| DOANE UNIVERSITY, a non-profit corporation, INTERCHURCH MINISTRIES OF NEBRASKA, a non-profit corporation, NEBRASKA STATE SUICIDE PREVENTION COALITION, a non-profit corporation, DONALD BELAU, and NEBRASKA STATE SUICIDE PREVENTION, AN UNINCORPORATED ASSOCIATION, | ) ) ) ) ) ) ) ) ) ) ) ) ) | **MEMORANDUM AND ORDER** |
| Defendants. | ) ) | |

      This lawsuit stems from a Doane University student's interactions with her supervisor and academic advisor, Defendant Donald Belau. Plaintiff Jennifer Fry alleges that while she was a student at Doane working on her Masters of Arts in Counseling and also working at two non-profit corporations (Defendants Interchurch Ministries of Nebraska ("IMN") and Nebraska State Suicide Prevention Coalition, Inc. ("NSSCP")), Defendant Belau was the dean and director of Doane's Masters of Arts in Counseling program and served as Fry's academic advisor and also as Fry's supervisor at IMN and NSSCP. Fry alleges that Belau subjected her to sexual harassment.

      Fry brings four state-law claims against Defendant Belau: intentional and/or

negligent infliction of emotional distress (COA 4[1]); assault (COA 6); defamation (COA 7); and tortious interference with employment relationship (COA 8).[2] (Filing 52 (Second Amended Complaint).) Defendant Belau moves for judgment on the pleadings (Filing 62) pursuant to Fed. R. Civ. P. 12(c).

## I. STANDARD OF REVIEW

The Federal Rules of Civil Procedure provide that "[a]fter the pleadings are closed—but early enough not to delay trial—a party may move for judgment on the pleadings." Fed. R. Civ. P. 12(c). "Judgment on the pleadings is appropriate when there is no material issue of fact and the moving party is entitled to judgment as a matter of law." *Country Preferred Ins. Co. v. Lee*, 918 F.3d 587, 588 (8th Cir. 2019).

"As a general rule, a Rule 12(c) motion for judgment on the pleadings is reviewed under the same standard as a 12(b)(6) motion to dismiss," *In re Pre-Filled Propane Tank Antitrust Litig.*, 893 F.3d 1047, 1056 (8th Cir. 2018) (internal quotation marks and citation omitted)—that is, "to accept as true all factual allegations set out in the complaint and to construe the complaint in the light most favorable to the plaintiff[s], drawing all inferences in [their] favor." *Ashley Cty., Ark. v. Pfizer, Inc.*, 552 F.3d 659, 665 (8th Cir. 2009) (internal quotation marks and citation omitted). Under the 12(b)(6) standard, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "Threadbare recitals of the elements of a cause of action, supported by

---

[1]"COA" stands for Cause of Action.

[2]In her First and Second Causes of Action, Plaintiff brings federal claims against Defendant Doane University under Title IX of the Education Amendments Act of 1972, 20 U.S.C. §§ 1681 *et seq.*, a federal statute that bans discrimination on the basis of sex in federally funded educational programs.

2

mere conclusory statements, do not suffice." *Id*. However, "a well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable, and that a recovery is very remote and unlikely." *Twombly*, 550 U.S. at 556 (internal quotation and citation omitted).

## II. FACTUAL ALLEGATIONS

The relevant factual allegations—which the court must accept as true—are set forth in the Second Amended Complaint (Filing 52):

> 11. For all times pertinent to this action, Fry was an employee of IMN and NSSPC.
>
> 12. For all times pertinent to this action, Fry was also a student at Doane University working on her Masters of Arts in Counseling.
>
> 13. For all times pertinent to this action, Dr. Belau was the Dean and Director of the Doane University Masters of Arts in Counseling and Fry's superior, supervisor, and advisor. Dr. Belau was employed by Doane University during the events of this lawsuit.
>
> 14. For all times pertinent to this action, Dr. Belau was Chair of the Board and Director of NSSCP and Fry's superior and supervisor for her work at NSSCP.
>
> 15. For all times pertinent to this action, Dr. Belau was an employee or under a contractual relationship with IMN and was Fry's superior and supervisor for her work at IMN.
>
> . . . .
>
> 18. On or around March 2014, Fry started work as a part-time outreach coordinator with Defendants NSSCP and IMN because she was told she could earn internship credit for her work.

3

19. [In] March 2014, Dr. Belau called Fry into his office to discuss the job at NSSCP and IMN and made the comment "sometimes we may need to put in some long hours and often be out late at night; our spouses are going to think we are having an affair."

20. In March 2014, Dr. Belau came to Fry's office, sat down, rolled his chair to Fry until their knees touched, put his hand on her knee, and said "you and I are going to become very close."

21. In August 2014, Dr. Belau told Fry she needed to "pull [her] big girl panties up" in response to Fry telling him that he was making her uncomfortable.

22. Between August and December 2014, Dr. Belau frequently remarked to Fry, when preparing for speaking engagements, that it would "not matter what any of the presenters said because all eyes will be on you."

23. In January 2015, Dr. Belau said that Fry was "eye candy." After the "eye candy" comment Dr. Belau joked that he should be careful or he'd get accused of sexual harassment.

24. On one occasion Fry bent over and Dr. Belau made a comment about her buttocks.

25. Dr. Belau told Fry that he was going to get his prostate examined when explaining why Dr. Belau could not be somewhere in March 2015.

26. On various occasions, Dr. Belau sent Fry texts on Saturday mornings which were not work or academic related and included comments that made her uncomfortable.

27. On various occasions, Dr. Belau made derogatory comments to Fry and when Fry became upset he told her not to act like a baby.

28. On various occasions, Dr. Belau would stand or sit very

close to Fry. He would come into Fry's office frequently and linger around her.

29. These actions and comments made Fry uncomfortable and she reported the situation to other Doane University faculty members and employees. No action was taken after Fry reported the situation to other Doane University faculty members and employees.

30. Fry was delayed in obtaining her degree as a result of Dr. Belau's acts and Doane University's inaction.

31. On March 24, 2015, a complaint was filed on Fry's behalf with Doane University's Human Resources Department.

32. During the investigation, Fry was required to move her office and limit her interactions with Dr. Belau which required her to stop participating in several organizations relevant to her field of study.

33. During the investigation, Dr. Belau was not placed on administrative leave or required to stop participating in organizations that Fry was a member of.

34. In June 2015, Doane University finally determined that Dr. Belau's actions violated Doane University policy and constituted sexual harassment.

35. After the formal complaint was filed with Doane University in March 2015, the Executive Director of IMN[] informed Fry that he heard she was not doing her job and that management wanted her to resign from IMN and NSSPC. Fry was put on a thirty day leave, but continued to work so that NSSPC would not lose its grant.

36. After the formal complaint was filed with Doane University in March 2015 and after Fry was constructively discharged by IMN and NSSPC, Dr. Belau told people in the counseling profession that Fry was fired from NSSPC for a lack of documentation.

37. On September 3, 2015, Plaintiff filed a complaint against Defendant Doane University with the U.S. Department of Education, Office for Civil Rights (OCR).

38. On December 6, 2017, the OCR issued its findings. OCR specifically found that:

    a.    There was ample evidence of Dr. Belau's harassing conduct; and
    b.    Fry was subject to harassing conduct based on her sex.

. . . .

65. . . . . Further Plaintiff suffered humiliation, inconvenience and mental anguish.

. . . .

75. . . . . these acts did in fact result in extreme emotional distress[.]

(Filing 52 at CM/ECF pp. 3-7, 10-12.)

### III. DISCUSSION

Defendant Belau argues that Fry has failed to plausibly allege any claim against him and, even if she did, such claims are time-barred. I shall separately address each of Fry's claims against Belau below.

### A. Intentional & Negligent Infliction of Emotional Distress

#### 1. Failure to Allege Claim

Belau argues that Fry's Second Amended Complaint fails to state a claim for intentional or negligent infliction of emotional distress and, in any event, such claims

are barred by the statute of limitations in Neb. Rev. Stat. § 25-207 (Westlaw 2019).

> To recover for intentional infliction of emotional distress, a plaintiff must prove (1) intentional or reckless conduct (2) that was so outrageous in character and so extreme in degree as to go beyond all possible bounds of decency and is to be regarded as atrocious and utterly intolerable in a civilized community and (3) that the conduct caused emotional distress so severe that no reasonable person should be expected to endure it.

*Roth v. Wiese*, 716 N.W.2d 419, 431, 433 (Neb. 2006) (also noting that "[t]he endurability of the distress is a factual question for the jury").

> Whether conduct is extreme and outrageous is judged on an objective standard based on all the facts and circumstances of the particular case. . . . Mere insults, indignities, threats, annoyances, petty oppressions, or other trivialities that result from living in society do not rise to the level of extreme and outrageous conduct. In determining whether certain conduct is extreme and outrageous, the relationship between the parties and the susceptibility of the plaintiff to emotional distress are important factors to consider.

*Roth*, 716 N.W.2d at 432 (internal citations omitted).

The negligent—as opposed to intentional—infliction of emotional distress "can be fairly described as mental or emotional harm (such as fright or anxiety) that is caused by the negligence of another and that is not directly brought about by a physical injury, but that may manifest itself in physical symptoms." *Hamilton v. Nestor*, 659 N.W.2d 321, 324-25 (Neb. 2003) (negligent infliction of emotional distress is separate theory of recovery or element of damage) (internal quotation and citation omitted). A plaintiff whose "only injury is an emotional one must show that their emotional distress is medically diagnosable and significant and is so severe that no reasonable person could have expected to endure it." *Catron v. Lewis*, 712 N.W.2d 245, 249 (Neb.

2006). "'It is only where [the emotional distress] is extreme that the liability arises.'" *Kant v. Altayar*, 704 N.W.2d 537, 540 (Neb. 2005) (quoting Restatement (Second) of Torts § 46, comment j. at 77 (1965)).

At this early stage, Plaintiff need only set forth sufficient factual matter which, if accepted as true, states a claim for relief that is plausible on its face. Plaintiff Fry clearly and specifically describes numerous instances of intentional, repeated, sexualized conduct by a man in a position of power over her academic, volunteer, and work lives—as well as her professional future—that caused her humiliation, mental anguish, emotional distress, and negative academic and professional consequences. *Brandon ex rel. Estate of Brandon v. Cty. of Richardson*, 624 N.W.2d 604, 621 (Neb. 2001) ("The extreme and outrageous character of conduct may . . . arise from the abuse of a position of power.") Fry alleges facts indicating that despite having knowledge that Belau's conduct negatively affected her, Belau continued to engage in conduct that went well beyond mere "insults, indignities, threats, annoyances, petty oppressions, or other trivialities." *Roth*, 716 N.W.2d at 432. In circumstances where a defendant is put on notice by a plaintiff that his actions are objectionable, and where a defendant continues to knowingly act in a way that violates plaintiff's rights, as is the case here, "a plausible claim exists for intentional infliction of emotional distress." *Bonnell v. Karels*, No. 4:18CV3066, 2018 WL 3383413, at *4 (D. Neb. July 11, 2018) (because bank was put on notice by plaintiff that withdrawal of funds by her brother was unauthorized and knew of plaintiff's financial situation and mental condition, plaintiff stated plausible claim for intentional infliction of emotional distress based on bank's continued refusal to honor its repayment obligation to its customer).

Therefore, Belau's Motion for Judgment on the Pleadings on Fry's claims for intentional and negligent infliction of emotional distress will be denied.

## 2. Statute of Limitations

In Nebraska, the applicable statute of limitations for Fry's emotional-distress claims, Neb. Rev. Stat. § 25-207 (Westlaw 2019), is four years.[3] *Keith v. Data Enterprises, Inc.*, 925 N.W.2d 723, 732 (Neb. App. 2019) ("The statute of limitations for negligence . . . is 4 years."; citing Neb. Rev. Stat. § 25-207(3) (Reissue 2016)); *Anonymous v. St. John Lutheran Church of Seward*, 703 N.W.2d 918 (Neb. App. 2005) (applying statute of limitations in Neb. Rev. Stat. § 25-207(3) to claim for intentional infliction of emotional distress claim).

"In a negligence action, it has generally been stated that a statute of limitations begins to run as soon as the cause of action accrues, and an action in tort accrues as soon as the act or omission occurs." *Shlien v. Bd. of Regents, Univ. of Nebraska*, 640 N.W.2d 643, 650 (Neb. 2002) (internal citation omitted). However, when a plaintiff "is subject to a continuing, cumulative pattern of tortious conduct, capable of being terminated and involving continuing or repeated injury, the statute of limitations does not run until the date of the last injury or cessation of the wrongful action." *Alston v. Hormel Foods Corp.*, 730 N.W.2d 376, 381 (Neb. 2007). In what is known as the "continuing tort doctrine," the "tortious act—not simply the continuing ill effects of

---

[3]Section 25-207 provides:

> The following actions can only be brought within four years: (1) An action for trespass upon real property; (2) an action for taking, detaining or injuring personal property, including actions for the specific recovery of personal property; (3) *an action for an injury to the rights of the plaintiff, not arising on contract, and not hereinafter enumerated*; and (4) an action for relief on the ground of fraud, but the cause of action in such case shall not be deemed to have accrued until the discovery of the fraud, except as provided in sections 30-2206 and 76-288 to 76-298.

Neb. Rev. Stat. § 25-207 (emphasis added).

prior tortious acts—[must] fall within the limitation period." *Id*.

Here, the date of Fry's last injury is unclear, making it impossible to conclude that her emotional-distress claims are barred by the relevant statute of limitations. Therefore, I shall deny Belau's Motion for Judgment on the Pleadings on these claims without prejudice to reassertion of his statute-of-limitations argument in a motion for summary judgment.

## B. Assault

### 1. Failure to Allege Claim

The intentional tort of assault in Nebraska is defined as "a wrongful offer or attempt with force or threats, made in a menacing manner, with intent to inflict bodily injury upon another with present apparent ability to give effect to the attempt, without requiring that the one assaulted be subjected to any actual physical injury or contact." *Reavis v. Slominski*, 551 N.W.2d 528, 536 (Neb. 1996) (internal quotation marks and citation omitted).

Here, Fry has alleged facts indicating that Belau held a position of power and authority over her, both in the classroom and the workplace. (Filing 52 ¶¶ 11-15.) This power dynamic was accompanied by Belau speaking to, and acting forcibly toward, Fry; physically standing, sitting, and lingering closely to Fry (*Id.* ¶ 28); touching her knee; repeatedly commenting on her body and appearance in an intimate manner; and texting Fry on weekends with comments that made her uncomfortable. (*Id*. ¶¶ 20-23.)

It is plausible to characterize these actions as attempted threats, made in a menacing manner, to inflict bodily injury on Fry with the power and ability to do so, especially when combined with Belau's alleged statements to Fry that "you and I are going to become very close," that Fry was "eye candy," that he should be careful or

he'd get accused of sexual harassment, that "sometimes we may need to put in some long hours and often be out late at night; our spouses are going to think we are having an affair," and that Fry needed to "pull [her] big girl panties up" in response to Fry telling him that he was making her uncomfortable. *Reavis*, 551 N.W.2d at 536. Therefore, Belau's Motion for Judgment on the Pleadings on Fry's assault claim will be denied.

### 2. Statute of Limitations

The four-year statute of limitations in Neb. Rev. Stat. § 25-207(3) applies to Fry's tortious assault claim. *Anonymous v. St. John Lutheran Church of Seward*, 703 N.W.2d 918, 921 (Neb. App. 2005) (applying four-year statute of limitations in Neb. Rev. Stat. § 25-207(3) to sexual-assault claim); 5 Neb. Prac., Civil Procedure § 5:10 (Mar. 2019) (four-year statute of limitations in Neb. Rev. Stat. § 25-207 applies to actions for assault and battery).

For the reasons discussed above with regard to Fry's emotional-distress claims, the date of Fry's last injury is unclear at this early stage in the proceedings, making it impossible to conclude whether her assault claim is barred by the relevant statute of limitations. Therefore, I shall deny Belau's Motion for Judgment on the Pleadings on Fry's assault claim without prejudice to reassertion of his statute-of-limitations argument in a motion for summary judgment.

## C. Defamation

### 1. Failure to Allege Claim

In the ordinary case, a claim of defamation requires (1) a false and defamatory statement concerning the plaintiff, (2) an unprivileged publication to a third party, (3) fault amounting to at least negligence on the part of the publisher, and (4) either actionability of the statement

> irrespective of special harm or the existence of special harm caused by the publication.

*Moats v. Republican Party of Nebraska*, 796 N.W.2d 584, 593 (Neb. 2011). Fry's Second Amended Complaint specifies that Belau's words constituted "defamation per se." (Filing 52 ¶ 92.) Spoken or written words are defamatory "per se" only "if they falsely impute the commission of a crime involving moral turpitude, an infectious disease, or unfitness to perform the duties of an office or employment, or if they prejudice one in his or her profession or trade or tend to disinherit one." *Id*. at 594 (internal quotation marks and citation omitted).

Fry alleges that after Fry filed her formal complaint with Doane University in March 2015, Belau—who was the NSSPC director and chair of the board—told third parties ("people in the counseling profession") that Fry "was fired from NSSPC for a lack of documentation," which was false. (Filing 52 ¶¶ 14, 36.) Fry also alleges that the executive director of IMN "heard she was not doing her job and that management wanted her to resign from IMN and NSSPC." (*Id*. ¶ 35.) In other words, Fry alleges that Belau falsely imputed, by spoken word, that Fry engaged in misconduct and was unfit to perform the duties of her employment and the mental-health profession. Fry alleges that as a result of Belau's defamatory statements, she suffered a loss of good will and damage to her reputation as a mental health practitioner.

These alleged facts, accepted as true, satisfy each element of a defamation claim. Therefore, Fry's Second Amended Complaint states a defamation claim that is plausible on its face, and Belau's Motion for Judgment on the Pleadings as to this claim will be denied.

### 2. Statute of Limitations

Defendant Belau asserts—and Fry does not disagree in her responsive

brief—that the one-year statute of limitations for libel and slander actions found in Neb. Rev. Stat. § 25-208 (Westlaw 2019) governs Fry's defamation cause of action. *See, e.g.*, Neb. Rev. Stat. § 25-839 (Westlaw 2019) (describing basis for libel and slander actions as "defamatory matter"); Neb. Rev. Stat. §§ 25-839 to -840.02 (Westlaw 2019) (statutes dealing with pleading libel and slander contained under category entitled "defamatory statements").

Fry does not specify a date from which the accrual of her defamation claim can be calculated for statute-of-limitations purposes. Rather, she alleges that Belau made his defamatory comments sometime after a formal complaint was filed with Doane University in March 2015, and that he "made these statements through the time that Plaintiff was a student at Doane and employed by IMN and NSSPC." (Filing 52 ¶¶ 36, 91.) It is not clear when Fry was no longer a student at Doane and when she was no longer employed by IMN and NSSPC.

Because Belau, as the moving party, has not established that there is no material issue of fact as to when Fry's defamation claim accrued for statute-of-limitations purposes and that he is entitled to judgment as a matter of law as to such claim, *Country Preferred Ins. Co.*, 918 F.3d at 588, Belau is not entitled to judgment on the pleadings on Fry's defamation claim. Therefore, I shall deny Belau's Motion for Judgment on the Pleadings on Fry's defamation claim without prejudice to reassertion of his statute-of-limitations argument in a motion for summary judgment.

### D. Tortious Interference With Employment Relationship

#### 1. Failure to Allege Claim

To succeed on a claim for tortious interference with a business relationship or expectancy, a plaintiff must prove (1) the existence of a valid business relationship or expectancy, (2) knowledge by the interferer of the relationship or expectancy, (3) an unjustified intentional act of

13

interference on the part of the interferer, (4) proof that the interference caused the harm sustained, and (5) damage to the party whose relationship or expectancy was disrupted.

*Denali Real Estate, LLC v. Denali Custom Builders, Inc.*, 926 N.W.2d 610, 626-27 (Neb. 2019). One's "at-will employment status, in and of itself, does not preclude a claim for tortious interference with the employment relationship." *Huff v. Swartz*, 606 N.W.2d 461, 467 (Neb. 2000) (internal quotation marks and citation omitted).

Fry clearly alleges facts suggesting that she had a valid business relationship or expectancy with IMN and NSSPC; that Belau knew of such relationship by virtue of his position as supervisor of Fry's work at those organizations; that Belau's actions caused Fry's constructive discharge from her positions with IMN and NSSPC; and that Belau's interference with Fry's valid business relationship with IMN and NSSPC caused her to lose income and benefits and to suffer damage to her professional and academic reputation and her goals of future employment in the mental-health field.

This is enough to survive Belau's Motion for Judgment on the Pleadings as to Fry's tortious-interference claim.

### 2. Statute of Limitations

Defendant Belau submits—without argument by Fry in her responsive brief—that the four-year statute of limitations in Neb. Rev. Stat. § 25-207 applies to Fry's tortious-interference claim. *See Hroch v. Farmland Indus., Inc.*, 548 N.W.2d 367, 371 (Neb. App. 1996) ("Actions for tortious business interference must be filed within 4 years under Neb. Rev. Stat. § 25-207 (Reissue 1995)."). However, Belau failed to raise a statute-of-limitations defense to Fry's claim for tortious interference with an employment relationship. (Filing 57, Belau's Answer to Second Amended Complaint.)

"Ordinarily in civil litigation, a statutory time limitation is forfeited if not raised in a defendant's answer or in an amendment thereto." *Day v. McDonough*, 547 U.S. 198, 202 (2006); *United States v. Big D Enterprises, Inc.*, 184 F.3d 924, 935 (8th Cir. 1999) ("A defense based upon the statute of limitations is generally waived if not raised in a responsive pleading."). *See also* Fed. R. Civ. P. 8(c)(1) (Westlaw 2019) ("In responding to a pleading, a party must affirmatively state any avoidance or affirmative defense, including . . . statute of limitations . . . ."); Fed. R. Civ. P. 12(b) (Westlaw 2019) ("Every defense to a claim for relief in any pleading must be asserted in the responsive pleading if one is required.")

Because Belau has waived his statute-of-limitations defense with regard to Fry's tortious-interference claim, his Motion for Judgment on the Pleadings on such ground is denied.

Accordingly,

IT IS ORDERED that Defendant Donald Belau's Motion for Judgment on the Pleadings (Filing 62) is denied as to Plaintiff Jennifer Fry's claims for intentional or negligent infliction of emotional distress, assault, defamation, and tortious interference with an employment relationship without prejudice to reassertion, in a motion for summary judgment, of Defendant Belau's statute-of-limitations argument as to Plaintiff Fry's emotional-distress, assault, and defamation claims. Because Defendant Belau has waived his statute-of-limitations defense to Plaintiff Fry's tortious-interference claim, Belau is not granted leave to raise his statute-of-limitations argument on that claim.

DATED this 11th day of December, 2019.

BY THE COURT:

*Richard G. Kopf*
Senior United States District Judge